**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 24-cv-01853-NYW-SBP

CARL GAMBRELL,
ALEXANDER HINKLE,
JAWAD KHOUIR,
ZACHARY MONDRAGON,
DOMINIC PELLICANE,
FRITZ SCHNEIDER,
JOSHUA COYLE, and
ALBERT GRANADOS, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

MOSES STANCIL, in his official capacity,
AMANDA RETTING, in her official capacity, and
KIMBERLY KLINE, in her official capacity,[1]

      Defendants.

---

**ORDER ON MOTION FOR PARTIAL DISMISSAL**

---

This matter is before the Court on Defendants' Partial Motion to Dismiss First

Amended Class Action Complaint Under Fed. R. Civ. P. 12(b)(6) (the "Motion" or "Motion

for Partial Dismissal").  [Doc. 25].  The Court has reviewed the Motion, the related briefing,

---

[1] Defendants' Motion for Partial Dismissal references "interim Chief of Behavioral Health Jason Guidry" and asserts that, under Rule 25, he is "automatically substituted for former Chief of Behavioral Health Kimberly Kline."  [Doc. 25 at 1 n.1].  Plaintiffs agree that "Ms. Kline is no longer employed by [CDOC]" and state that "[u]pon information and belief, her job is now being handled by an interim appointment."  [Doc. 29 at 2 n.1].  To be sure, under Rule 25 of the Federal Rules of Civil Procedure, when a government official leaves their position, "[t]he officer's successor is automatically substituted as a party."  Fed. R. Civ. P. 25(d).  However, no Party has moved to update the caption in this case, and it is unclear to the Court whether Mr. Guidry remains the interim Chief of Behavioral Health. Accordingly, it is **ORDERED** that on or before **September 8, 2025**, the Parties shall file a joint motion to amend the case caption that reflects the current officeholder.

and applicable case law, and it concludes that oral argument would not materially assist in resolving the Motion.  For the reasons set forth in this Order, the Motion for Partial Dismissal is respectfully **DENIED**.

## BACKGROUND

A person who commits an offense and is sentenced under Colorado's Sex Offender Lifetime Supervision Act of 1998 ("SOLSA") is "required as a part of the sentence to undergo treatment."  Colo. Rev. Stat. § 18-1.3-1004(3); [Doc. 21 at ¶ 9].[2] Participation in sex offender treatment is a condition precedent to an offender's eligibility for parole.  Colo. Rev. Stat. § 18-1.3-1006(1)(a); [Doc. 21 at ¶ 9].

The Colorado Department of Corrections ("CDOC") offers sex offender treatment through the Sex Offender Treatment and Monitoring Program ("SOTMP").  [Doc. 21 at ¶ 1].  However, CDOC offers SOTMP treatment at just two of its facilities:  Fremont Correctional Facility and Territorial Correctional Facility.  [*Id.* at ¶ 12].  SOTMP is also understaffed, with 26 of 41 therapist positions currently vacant and a 53% vacancy rate for SOTMP staff overall.  [*Id.* at ¶ 15].  According to Plaintiffs, CDOC fails to properly fund or staff SOTMP, expand its treatment locations, or permit more flexible treatment options, such as telehealth therapy.  [*Id.* at ¶ 74].  This has created a backlog of inmates who are eligible for, but denied access to, SOTMP treatment:  in 2023, CDOC admitted 828 inmates who had been referred to SOTMP and graduated only about 160 inmates from the program that year.  [*Id.* at ¶ 78].

---

[2] The Court draws these facts from the First Amended Class Action Complaint (the "First Amended Complaint"), [Doc. 21], presumes they are true for purposes of the Motion for Partial Dismissal, and limits its recitation of the facts to those relevant to the issue raised therein.

Plaintiffs Carl Gambrell ("Mr. Gambrell"), Alexander Hinkle ("Mr. Hinkle"), Jawad Khouir, Zachary Mondragon, Dominic Pellicane, Fritz Schneider, Joshua Coyle, and Alberto Granados (together, "Plaintiffs") have been convicted of sex offenses and are currently incarcerated within CDOC facilities. [*Id.* at ¶¶ 36–43]. Each Plaintiff is incarcerated pursuant to an indeterminate sentence of a number of years to life. [*Id.*]. All Plaintiffs are classified as "S5R," which means that they are eligible and ready for sex offender treatment. [*Id.* at ¶ 44]. However, all Plaintiffs have been denied an opportunity to participate in that treatment. [*Id.* at ¶¶ 36–43]. Plaintiffs Khouir, Pellicane, Schneider, Coyle, and Granados have been told that the CDOC's limited resources are precluding their treatment opportunity. [*Id.* at ¶¶ 38, 40–43].

Two Plaintiffs in particular—Mr. Gambrell and Mr. Hinkle—pleaded guilty pursuant to a plea agreement through which "the State guaranteed and promised to provide [them] with, timely and coextensive with incarceration, the offense-specific treatment necessary to become eligible for parole." [*Id.* at ¶¶ 152, 159]. Mr. Gambrell's and Mr. Hinkle's requests for sex offender treatment have been denied, and they assert that the denial of access to treatment amounts to a breach of their plea agreements. [*Id.* at ¶¶ 156–57, 163–64].

Plaintiffs filed this lawsuit on July 2, 2024, [Doc. 1], and filed the First Amended Complaint on October 1, 2024, naming three Defendants: Moses Stancil, the Executive Director of the CDOC; Amanda Retting, the CDOC's SOTMP administrator and the CDOC representative on the Sex Offender Management Board; and Kimberly Kline,[3] the CDOC's Chief of Behavioral Health and chair of the Sex Offender Management Board

---

[3] *See supra* note 1.

3

(collectively, "Defendants"). [Doc. 21 at ¶¶ 22–24]. Plaintiffs assert claims on behalf of themselves and a proposed class comprised of "[a]ll inmates with indeterminate sentences under SOLSA who are coded S5-R, who are past their parole eligibility date, and who have been denied access to SOTMP treatment." [*Id.* at ¶ 105]. They bring three causes of action: (1) a Fourteenth Amendment procedural due process claim under 42 U.S.C. § 1983, asserted by all Plaintiffs against all Defendants ("Claim I"), [Doc. 21 at ¶¶ 136–41]; (2) a § 1983 Fourteenth Amendment substantive due process claim, asserted by all Plaintiffs against all Defendants ("Claim II"), [*id.* at ¶¶ 142–49]; and (3) a § 1983 Fourteenth Amendment due process claim based on an alleged breach of plea agreements, raised by Mr. Gambrell and Mr. Hinkle against all Defendants ("Claim III"), [*id.* at ¶¶ 150–70].

Defendants move to dismiss only Claim III—the due process claim arising out of an alleged breach of Mr. Gambrell's and Mr. Hinkle's plea agreements. *See* [Doc. 25]. In their view, the claim should be dismissed because it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). [Doc. 25 at 5]. The Motion is fully briefed, *see* [Doc. 29; Doc. 36], and the Court considers the Parties' arguments below.[4]

---

[4] On December 17, 2024, Plaintiffs filed a Motion to Strike Defendants' Reply or, in the Alternative, For a Sur Reply (the "Motion to Strike"), arguing that Defendants improperly raised new arguments in their Reply. [Doc. 40 at 4–8]. Defendants oppose the Motion to Strike, arguing that "the reply brief merely responds to arguments made in the response brief." [Doc. 42 at 2]. The Court respectfully disagrees with Defendants' assertion and finds that their Reply in Support of Partial Motion to Dismiss ("Reply") goes beyond simple responsive arguments and raises a new ground for dismissal not articulated in their Motion for Partial Dismissal. *See* [Doc. 36 at 8–9 (arguing that Plaintiffs "have not stated a claim against CDOC for breach of contract" because, inter alia, they "have not alleged facts that might demonstrate the Defendants were a party to the agreements")]. However, it is well established that arguments raised for the first time in a reply brief may be deemed waived. *White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017). In its discretion, the Court elects to simply disregard the new arguments raised in Defendants' Reply rather than

**LEGAL STANDARD**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss

a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all

well-pleaded factual allegations . . . and view these allegations in the light most favorable

to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation

omitted).  The plaintiff may not rely on mere labels or conclusions, "and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quotation omitted).

**ANALYSIS**

"[A] § 1983 action will not lie when a state prisoner challenges 'the fact or duration

of his confinement,' . . . and seeks either 'immediate release from prison,' or the

'shortening' of his term of confinement."  *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005)

(quoting *Preiser v. Rodriguez*, 411 U.S. 475, 482, 489 (1973)).  Nor may a state prisoner

seek money damages under § 1983 based on the alleged unconstitutionality of his

conviction or sentence.  *Heck*, 512 U.S. at 478.  In *Heck*, the Supreme Court held that

> when a state prisoner seeks damages in a § 1983 suit, the district court
> must consider whether a judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if it would, the complaint
> must be dismissed unless the plaintiff can demonstrate that the conviction
> or sentence has already been invalidated.  But if the district court
> determines that the plaintiff's action, even if successful, will *not* demonstrate
> the invalidity of any outstanding criminal judgment against the plaintiff, the

striking the brief or permitting a sur-reply.  Accordingly, the Motion to Strike is respectfully
**DENIED**.

action should be allowed to proceed, in the absence of some other bar to
the suit.

*Id.* at 486–87 (footnotes omitted).  The Supreme Court later reiterated that an action under

§ 1983 "is barred (absent prior invalidation)—no matter the relief sought (damages or

equitable relief), no matter the target of the prisoner's suit (state conduct leading to

conviction or internal prison proceedings)—*if* success in that action would necessarily

demonstrate the invalidity of confinement or its duration."  *Wilkinson*, 544 U.S. at 81–82.

"Thus, for § 1983 claims necessarily challenging the validity of a conviction or sentence,

*Heck* delays the rise of the cause of action until the conviction or sentence has been

invalidated."  *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999).

Defendants argue that the challenged due process claim is barred by *Heck v.*

*Humphrey* because a finding that Defendants breached Mr. Gambrell's or Mr. Hinkle's

plea agreement "would cast doubt on [those] Plaintiffs' underlying convictions and/or

sentences."  [Doc. 25 at 6].  They contend that "enforcing the terms of [the] plea

agreements through specific performance . . . necessarily would imply the invalidity of

their underlying convictions or sentences," so the due process claim "is not cognizable

under § 1983."  [*Id.* at 10]; *see also* [*id.* at 4, 6].

However, Defendants do not explain *why* Mr. Gambrell's or Mr. Hinkle's success

on their due process claim would necessarily invalidate their convictions or sentences.

*See generally* [*id.*].  As Plaintiffs highlight in their Response to Defendant[s'] Partial Motion

to Dismiss First Amended Class Action Complaint Under Fed. R. Civ. P. 12(b)(6), *see*

[Doc. 29 at 4, 11], Mr. Gambrell and Mr. Hinkle seek specific performance of their plea

agreements, not rescission of them, *see* [Doc. 21 at ¶ 165].  Plaintiffs contend that their

claim for specific performance is not barred by *Heck* because a ruling in their favor would

6

"not undermine Plaintiffs' conviction[s] or sentence[s] in any way."  [Doc. 29 at 11–13
(emphasis omitted)].  Instead, Plaintiffs argue that a judgment in their favor would only
require Defendants to grant Mr. Gambrell and Mr. Hinkle access to the treatment
contemplated in their plea agreements, which would at most permit them to be considered
for parole.  [*Id.* at 12–13].

The Court respectfully agrees with Plaintiffs.  Under *Preiser*, *Heck*, and their
progeny, claims under § 1983 are barred when the plaintiff "seek[s] to invalidate the
duration of their confinement—either *directly* through an injunction compelling speedier
release or *indirectly* through a judicial determination that necessarily implies the
unlawfulness of the State's custody."  *Wilkinson*, 544 U.S. at 81.  But § 1983 "remains
available for procedural challenges where success in the action *would not necessarily*
spell immediate or speedier release for the prisoner."  *Id.*

In *Wilkinson*, two inmates challenged the parole procedures applicable to their
incarceration, one challenging parole-eligibility procedures and the other challenging
parole-suitability procedures.  *Id.* at 76–77.  They sought, in pertinent part, injunctive relief
directing prison officials to grant them new parole hearings.  *Id.* at 77.  The Supreme Court
found these claims cognizable under § 1983 because although the plaintiffs sought relief
"that [would] render invalid the state procedures used to deny parole eligibility . . . and
parole suitability," they did not seek any injunctive relief "ordering [their] immediate or
speedier release into the community."  *Id.* at 82.  And, the Court explained, success on
their claims would not necessarily imply the invalidity of their convictions or sentences—
it would simply mean new parole eligibility review for one plaintiff and a new parole
hearing for the other.  *Id.*

Defendants do not meaningfully distinguish *Wilkinson* from this case, arguing only

that *Wilkinson* "does not concern the breach of a plea agreement; rather, it was brought

by two inmates who challenged the application of new and harsher parole guidelines to

their pre-guidelines sentences." [Doc. 36 at 7]. But despite any factual differences

between *Wilkinson* and this case, the analysis and holding of *Wilkinson* still guide the

Court here. Like *Wilkinson*, this is not a case where the requested relief would necessarily

"demand[] immediate release or a shorter period of detention." *Wilkinson*, 544 U.S. at 79;

*see, e.g.*, *Preiser*, 411 U.S. at 487–88 (action challenging alleged unconstitutional

deprivation of good-time credits and seeking restoration of credits was appropriately

raised in habeas, as it challenged "the very duration of [the inmates'] physical

confinement" and effectively demanded immediate release or shorter detention). As

alleged in the First Amended Complaint and provided by Colorado law, sex offender

treatment is a statutorily mandated prerequisite to parole eligibility. [Doc. 21 at ¶¶ 9–10,

152, 159]; Colo. Rev. Stat. §§ 16-11.7-105(1), 18-1.3-1004(3). But participation in or

completion of treatment will not necessarily result in an inmate's release on parole.

Rather, the parole board must still determine (1) "whether the sex offender has

successfully progressed in treatment"; (2) whether the offender would "pose an undue

threat to the community if released under appropriate treatment and monitoring

requirements"; and (3) "whether there is a strong and reasonable probability that the

person will not thereafter violate the law." Colo. Rev. Stat. § 18-1.3-1006(1)(a); *see also*

*People v. Tucker*, 194 P.3d 503, 504 (Colo. App. 2008) ("[SOLSA's] overall statutory

scheme . . . makes it clear that the board's decision to release offenders on parole

contains elements of discretion, . . . provided that the discretion accords with the

8

requirements of [SOLSA].").

In other words, a judgment in Plaintiffs' favor would not necessarily result in their immediate or speedier release. It would, at most, give Mr. Gambrell and Mr. Hinkle the opportunity to complete the treatment that remains a statutorily required condition precedent to parole. [Doc. 21 at ¶¶ 9–10]. Under *Wilkinson*, such a claim is cognizable under § 1983. *See* 544 U.S. at 82; *see also Marshall v. Milyard*, 415 F. App'x 850, 854–55 (10th Cir. 2011) (reversing dismissal of § 1983 claim based on loss of good-time credits because "[i]n most cases, parole in Colorado remains discretionary even after a prisoner accrues sufficient credits to become eligible for it," so restoration of good-time credits would afford the plaintiff "only speedier consideration for discretionary parole, rather than ensure speedier release"); *Bartley v. Wis. Dep't of Corr.*, 258 F. App'x 1, 2 (7th Cir. 2007) ("[A]n inmate may challenge state parole procedures in an action under § 1983 when success would merely mean becoming eligible for a discretionary grant of parole."); *Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997) ("The only benefit that a victory in this case would provide [the plaintiffs] . . . is a ticket to get in the door of the parole board, thus only making them *eligible* for parole consideration according to the terms of their sentences. If [the plaintiffs] win, it will in no way *guarantee* parole or necessarily shorten their prison sentences by a single day."). While a favorable determination *might* ultimately lead to Mr. Gambrell's or Mr. Hinkle's successful progression through treatment and eventual release on parole, "that outcome is hardly inevitable." *Skinner v. Switzer*, 562 U.S. 521, 534 (2011).

Nor would Plaintiffs' success on this claim "necessarily imply the invalidity of [their] conviction[s] or sentence[s]." *Heck*, 512 U.S. at 487. The Supreme Court was "careful in

9

*Heck* to stress the importance of the term 'necessarily.'"    *Skinner*, 562 U.S. at 534 (quotation omitted).    A judicial determination that Defendants breached the plea agreements would not *necessarily* call the validity of those agreements into question, as any such determination would be based on Defendants' alleged conduct since the execution of the plea agreements, not the agreements' validity at the time of execution. *See Puckett v. United States*, 556 U.S. 129, 137 (2009) ("[T]here is nothing to support the proposition that the Government's breach of a plea agreement retroactively causes the defendant's agreement to have been unknowing or involuntary. . . .  [W]hen one of the exchanged promises is not kept[,] . . . the contract [is] broken," and "[t]he party injured by the breach will generally be entitled to some remedy. . . .  [T]hat is not the same thing as saying the contract was never validly concluded.").    Moreover, as mentioned above, Plaintiffs do not seek recission of their plea agreements, but specific performance.  [Doc. 21 at ¶¶ 165, 170].  A ruling in Plaintiffs' favor on this claim can exist in harmony with their valid convictions and sentences.

The cases Defendants rely upon do not change the Court's analysis.  Defendants primarily rely on *Paige v. Oklahoma Department of Corrections*, a non-binding case that appears incompatible with subsequent Supreme Court precedent.    *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quotation omitted)).    In *Paige*, the plaintiff brought a claim similar to the one at issue here, alleging that Oklahoma's promises of "sex offender therapy and eligibility for parole" had not been upheld, and the state had breached the plaintiff's plea agreement.  No. 06-cv-01057-C, 2007 WL 1139822, at *4

10

(W.D. Okla. Apr. 17, 2007), *aff'd*, 248 F. App'x 35 (10th Cir. 2007).  The magistrate judge

found that the claim was barred by *Heck* because it necessarily implied the invalidity of

the plaintiff's convictions.  *Id.*  This determination was supported by a citation to the

Supreme Court case of *Mabry v. Johnson*, wherein the Supreme Court stated that "when

the prosecution breaches its promise with respect to an executed plea agreement, the

defendant pleads guilty on a false premise, and hence his conviction cannot stand."  *Id.*

(quoting *Mabry v. Johnson*, 467 U.S. 604, 509 (1984))].  The district judge accepted the

magistrate judge's recommendation, *id.* at *1, and the United States Court of Appeals for

the Tenth Circuit affirmed, relying on the same language from *Mabry*, *see* 248 F. App'x

at 37.

However, in *Puckett*, the Supreme Court expressly stated that the *Mabry* Court's

statement "was dictum."  *Puckett*, 556 U.S. at 138 n.1.  According to the *Puckett* Court,

*Mabry*'s "conclusion that the conviction cannot stand is only sometimes true (if that is the

remedy the court prescribes for the breach).  And even when the conviction is overturned,

the reason is not that the guilty plea was unknowing or involuntary."  *Id.*  The Supreme

Court "disavow[ed] any aspect of the *Mabry* dictum that contradicts" the holding in

*Puckett*.  *Id.*  Thus, *Paige* is at odds with subsequent binding precedent in *Puckett*, and

the Court cannot rely on it.[5]

---

[5] *Webber v. Weaver*, 6 F. App'x 706 (10th Cir. 2001), another case cited by Defendants,
is also distinguishable.  In that case, the plaintiff entered into a plea agreement in which
the state agreed to drop certain charges against him.  *Id.* at 707–08.  However, in
contravention of the plea agreement, the state later reinitiated proceedings on the
charges it agreed to drop.  *Id.* at 708.  The plaintiff entered into a second plea agreement
on those reinitiated charges, and after sentencing, he brought a § 1983 claim alleging a
breach of the first plea agreement.  *Id.*  The Tenth Circuit concluded that this challenge
was barred by *Heck* because if the plaintiff prevailed on his claim that the state breached
the first plea agreement, "that result would necessarily imply that his current sentence

The connection between Plaintiffs' allegations of a breach of their plea agreements
and their potential release on parole "is too tenuous here to achieve [Defendants'] legal
door-closing objective." *Wilkinson*, 544 U.S. at 78.  Because a judgment in Plaintiffs' favor
would not necessarily imply the invalidity of their convictions or sentences and would not
necessarily demand release or a shorter period of incarceration, *Heck* does not bar Mr.
Gambrell's and Mr. Hinkle's due process claim for breach of their plea agreements.  *See
id.* at 82.  Accordingly, the Motion for Partial Dismissal is respectfully **DENIED**.

**CONCLUSION**

For the reasons set forth above, **IT IS ORDERED** that:

(1)    Defendants' Partial Motion to Dismiss First Amended Class Action
Complaint Under Fed. R. Civ. P. 12(b)(6) [Doc. 25] is **DENIED**;

(2)    Plaintiffs' Motion to Strike Defendants' Reply or, in the Alternative, For a Sur
Reply [Doc. 40] is **DENIED**; and

(3)    On or before **September 8, 2025**, the Parties shall file a joint motion to
amend the case caption to reflect the appropriate Defendant in lieu of
Kimberly Kline, in her official capacity as CDOC Chief of Behavioral Health.

DATED:  August 25, 2025                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

was invalid."  *Id.*  In contrast, Plaintiffs here do not challenge the validity of their plea
agreements, only Defendants' alleged breach thereof.  *Puckett*, 556 U.S. at 137.